## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MATTHEW GEBERT** ) | |
| 270 Philadelphia Ave. ) | |
| Purgitsville, WV 26852 ) | |
| ) | |
| Plaintiff, ) | |
| V. ) | |
| ) | **COMPLAINT** |
| **DEPARTMENT OF STATE** ) | **Civil Action No:** |
| 2201 C St., NW ) | |
| Washington, DC 20520 ) | |
| ) | |
| <u>**As to each Defendant Serve:**</u> ) | |
| United States Attorney for ) | |
| The District of Columbia ) | |
| 601 D Street NW ) | |
| Washington, DC 20530 ) | |
| ) | |
| Attorney General of ) | |
| The United States ) | |
| U.S. Department of Justice ) | |
| 950 Pennsylvania Avenue ) | |
| Washington, DC 20530 ) | |
| ) | |
| Defendants. ) | |

### <u>COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF</u>

For his Complaint, Matthew Gebert ("Mr. Gebert" or "Plaintiff"), by the undersigned counsel, states as follows:

1.    Plaintiff, Mr. Gebert, brings this action for declaratory, injunctive relief, and other appropriate relief and seeks the release of agency records improperly withheld from Plaintiff by Defendant, the Department of State pursuant to the Privacy Act of 1974  5 U.S.C. §552a <u>et seq.</u> ("Privacy Act") and  the Freedom of Information Act, 5 U.S.C. §552(a) <u>et seq.</u> ("FOIA").

**PARTIES**

3.     Plaintiff is an American citizen and a resident of West Virginia. Plaintiff is the subject of records maintained by the Department of State.

4.     The Defendant, Department of State, headquartered at Washington, D.C., and their federal agencies fall under the definition of "federal government agency" within the meaning of (1) 28 U.S.C. §1346(b), 28 U.S.C. §2401(b), and 28 U.S.C. §2671, and (2) 5 U.S.C. §552(f)(1) and 5 U.S.C. §552a(a)(1). Defendant is headquartered at the Harry S. Truman Building, 2201 C Street NW, Washington, D.C., U.S. 20520. The Defendant maintains a system of records subject to the FOIA and Privacy Act and is in possession, custody, and control of records about Mr. Gebert.

**JURISDICTION AND VENUE**

5.     The Court has both subject matter jurisdiction over this action and personal jurisdiction over the Defendants pursuant to 5 U.S.C. §552(a)(4B), 5 U.S.C. §552a(g)(1), and 28 U.S.C. §1331. The Court has the authority to issue declaratory and injunctive relief under 28 U.S.C. § 1361, 5 U.S.C. §552(a)(4)(B), and 5 U.S.C. §552a(g)(2)(A). The venue is proper in this Court pursuant to 5 U.S.C. §552(a)(4)(B), 5 U.S.C. §552a(g)(5), and 28 U.S.C. §1391 (b) and (e). The Court has the authority to award attorneys' fees and litigation costs under 5 U.S.C. §552(a)(4)(E)(i), 5 U.S.C. §552a(g)(3)(B), and  28 U.S.C. § 2412.

**LEGAL FRAMEWORK**

**Freedom of Information Act**

6.     The Freedom of Information Act (FOIA) provides that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, *shall*

make the records promptly available to any person." 5 U.S.C. § 552(a)(3) (emphasis added).

Thus, FOIA creates a presumption that records held by the federal government must be produced

to members of the public upon request.

7.    The FOIA further provides that an agency, upon any request for records, shall

"determine within 20 days (excepting Saturdays, Sundays, and legal public holidays) after the

receipt of any such request whether to comply with such request and shall immediately notify the

person making such request of . . . such determination and the reasons therefor[.]" 5 U.S.C.

§552(a)(6)(A)(i).

8.    "Any person making a request to any agency for records . . . shall be deemed to

have exhausted his administrative remedies with respect to such request if the agency fails to

comply with the applicable time limit provisions of this paragraph." 5 U.S.C. §552(a)(6)(C)(i).

9.    Pursuant to the FOIA, the "court may assess against the United States reasonable

attorney fees and other litigation costs reasonably incurred in any case under this section in

which the complainant has substantially prevailed. 5 U.S.C. §552(a)(4)(E)(i). A "complainant

has substantially prevailed if the complainant has obtained relief through either—(I) a judicial

order, or an enforceable written agreement or consent decree; or (II) a voluntary or unilateral

change in position by the agency, if the complainant's claim is not insubstantial." 5 U.S.C.

§552(a)(4)(E)(ii).

## Privacy Act

10.    The Privacy Act provides that "[e]ach agency that maintains a system of records

shall . . . upon request by any individual to gain access to his record or to any information

pertaining to him which is contained in the system, permit him… to review the record and have a

copy made of all or any portion thereof in a form comprehensible to him[.]" 5 U.S.C. §

552a(d)(1). The Privacy Act accordingly creates a presumption that records held by the federal government that pertain to a specific individual must be made available to that individual upon request.

11.    When an agency "refuses to comply with an individual request under subsection (d)(1) . . . the court may enjoin the agency from withholding the records and order the production to the complainant of any agency records improperly withheld from him." 5 U.S.C. § 552a(g)(1)(B); 5 U.S.C. § 552a(g)(3)(A).

12.    Further, the "court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this paragraph in which the complainant has substantially prevailed." 5 U.S.C. § 552a(g)(3)(B).

13.    When an agency fails to comply with any provision of the Privacy Act, or any rule promulgated thereunder, not articulated within 5 U.S.C. § 552a(g)(1)(A)-(C), in such a way as to have an adverse effect on an individual, the individual may bring civil action against the agency. 5 U.S.C. § 552a(g)(1)(D). If the

> "court determines that the agency acted in a manner which was intentional or willful, the United States shall be liable to the individual in an amount equal to the sum of - (A) actual damages sustained by the individual as a result of the refusal or failure, but in no case shall a person entitled to recovery receive less than the sum of $1,000; and (B) the costs of the action together with reasonable attorney fees as determined by the court."

5 U.S.C. § 552a(g)(4).

## FACTS
### Background

14.    Defendant maintains a system of records that includes information about Plaintiff as Plaintiff has been employed by the Defendant, State Department, since May 19, 2013.

15.    On August 16, 2019, Defendant notified Plaintiff, via a memorandum, that his security clearance was suspended pending the outcome of an investigation. The August 16, 2019, memorandum noted that Defendant's Office of Personnel Security and Suitability became aware, on August 7, 2019, of the Hatewatch blog of the Southern Poverty Law Center (SPLC), which published an online article titled, "U.S. State Department Official Involved in White Nationalist Movement, Hatewatch Determines." Specifically, the August 16, 2019, memorandum noted that the article connected Plaintiff "to various white nationalist activities." The memorandum alleged "concerns that [Plaintiff] concealed and omitted information in [his] periodic reinvestigation completed May 9, 2019," and that this raised "serious security concerns that could be disqualifying under National Security Adjudicative Guidelines E (Personal Conduct)." **Exhibit A**.

16.    As part of the investigation into the Plaintiff, Defendant asked Plaintiff about and gathered information regarding Plaintiff organizational affiliations, as well as his political and social beliefs, information protected by the First Amendment. *Id*.

17.    On July 1, 2020, Plaintiff was notified that his security clearance was revoked pursuant to Guideline E. The Summary and Analysis, or Statement of Reasons (SOR), that accompanied the correspondence detailed his First Amendment protected activities. **Exhibit B**.

18.    Because holding a valid Top Secret security clearance is a condition of employment for Plaintiff, this suspension of his security clearance resulted in Plaintiff's suspension from his employment indefinitely without pay. **Exhibit C**.

19.    Pursuant to 5 U.S.C. § 552a(e)(3), an agency is required to have a signed Privacy Act Statement for all persons asked to provide personal information about themselves, which

will go into a system of records (i.e., the information will be stored and retrieved using the individual's name or other personal identifier such as a Social Security number).

20.     On September 9, 2018, Plaintiff completed and signed the Standard Form (SF-86), which included a Privacy Act Statement, to commence his security clearance investigation. **Exhibit D**. However, the Plaintiff never signed a Privacy Act Statement, other release of information, or consent form authorizing the Defendant to collect First Amendment protected information about him.

21.     Since the Defendant is using the SF-86 Privacy Act Statement alone, the Defendant is limited to collecting information elicited on the SF-86. This does not include First Amendment protected information unless specifically acknowledged via a new Privacy Act Statement.

**Process and Procedures Governing Security Clearance Investigations**

22.     The Director of National Intelligence sets forth all rules governing security clearance investigations. Each federal agency has to follow the guidance provided by the President or his or her designee.

23.     The most applicable and relevant Executive Order, and where the analysis should begin, can be found in Executive Order 13467. Executive Order 13467 was one of many measures taken by the Bush administration post-9/11 aimed at aligning the nation's intelligence community. Executive Order 13467 is titled "Reforming Processes Related to Suitability for Government Employment, Fitness for Contractor Employees, and Eligibility for Access to Classified National Security Information," issued June 30, 2008.[1] Executive Order 13467 is the beginning of the statutory framework because: (1) it is the most recent Executive Order on the

---

[1]     For reference, Executive Orders 10865 and 12968 were promulgated February 1960 and August 1995, respectively, and Directive 5220.6 was implemented January of 1992.

issue; (2) it appoints the Director of National Intelligence as the Security Executive Agent who promulgates all rules, policies, guidelines, and oversight for all security clearances issued under Executive Authority; and (3) it explicitly directs the application of Executive Order 12968 as the framework by which to determine eligibility for access to classified information.

24.    Furthermore, Executive Order 13467, Section 2.3 specifically dictates:

(c) The Director of National Intelligence shall serve as the Security Executive Agent. The Security Executive Agent:

(i) shall direct the oversight of investigations and determinations of eligibility for access to classified information or eligibility to hold a sensitive position made by any agency;

(ii) **shall be responsible for developing uniform and consistent policies and procedures to ensure the effective, efficient, and timely completion of investigations and adjudications relating to determinations of eligibility for access to classified information or eligibility to hold a sensitive position**;

(iii) may issue guidelines and instructions to the heads of agencies to ensure appropriate uniformity, centralization, efficiency, effectiveness, and timeliness in processes relating to determinations by agencies of eligibility for access to classified information or eligibility to hold a sensitive position;

(iv) **shall serve as the final authority to designate an agency or agencies to conduct investigations of persons who are proposed for access to classified information to ascertain whether such persons satisfy the criteria for obtaining and retaining access to classified information or eligibility to hold a sensitive position**;

(v) shall serve as the final authority to designate an agency or agencies to determine eligibility for access to classified information in accordance with Executive Order 12968 of August 2, 1995;

(vi) shall ensure reciprocal recognition of eligibility for access to classified information among the agencies, including acting as the final authority to arbitrate and resolve disputes among the agencies involving the reciprocity of investigations and determinations of eligibility for access to classified information or eligibility to hold a sensitive position; and

(vii) may assign, in whole or in part, to the head of any agency (solely or jointly) any of the functions detailed in (i) through (vi), above, with the agency's exercise of such assigned functions to be subject to the Security Executive Agent's oversight and with such terms and conditions (including approval by the Security Executive Agent) as the Security Executive Agent determines appropriate.

25.    Therefore, Executive Order 13467 provides clear guidance for the Director of National Intelligence to control the security clearance process.

**SEAD 1: SECURITY EXECUTIVE AGENT AUTHORITIES AND RESPONSIBILITIES**

26.    SEAD 1 describes the Security Executive Agent's (SecEA), otherwise known as the Director of National Intelligence, roles and responsibilities. Put a different way, SEAD 1 sets forth a common set of guidelines and policies for which all security clearance adjudications by **every** agency **must** comply:

h. developing requirements and procedures, to include but not limited to, the implementation of standardized:

(1) **security questionnaires**;
(2) financial disclosure forms;
(3) polygraph policies and procedures;
(4) foreign travel reporting requirements; and
(5) foreign contact reporting requirements;

i. **developing and overseeing policies and procedures governing uniform investigator and adjudicator training, and promulgating implementing guidance for the same**;

j. **approving** agency requests to establish additional investigative or adjudicative requirements (other than requirements for the conduct of a polygraph examination) that ***exceed the requirements*** for eligibility to hold a sensitive position or access to classified information… [emphasis added]

27.    In other words, if the Defendant wants to ask additional questions, it would have had to receive SecEA approval since SecEA sets forth the requirements for eligibility to hold a sensitive position or access to classified information. Defendant did not request and receive the

authority to ask about and collect information about Plaintiff's First Amendment protected activity. SEAD 1 (F)(h-i).

28.     SEAD 1 focuses on creating uniformity throughout the security clearance process. More specifically, SEAD 1 states that, "SecEA…is responsible for…improving the performance of security clearance processing including…(2) evaluating the use of available information technology and databases to expedite investigative and adjudicative processes for all and to verify standard information submitted as part of an application for a security clearance…" SEAD 1(F)(k)(2). Most importantly, SecEA has the authority to designate "investigative agencies" and "adjudicative agencies." This authority is important because although the Agency can share their information with law enforcement, SecEA is not granting the "investigative agency" or the "adjudicative agency" with law enforcement authority.  SecEA's authority is otherwise described in the following paragraph:

> The SecEA, with respect to investigations and determinations made by any agency for eligibility for access to classified information and eligibility to hold a sensitive position, is responsible for: …
>
> c. serving as the final authority to designate a department, agency, or agencies to:
>
> (1) conduct investigations of persons who are proposed for eligibility for access to classified information or eligibility to hold a sensitive position to ascertain whether such persons satisfy the criteria for obtaining and retaining eligibility; and
>
> (2) determine eligibility for access to classified information in accordance with EO 12968. SEAD 1(F)(c)

### SEAD 4

29.     In June 2017, the Director of National Intelligence issued SEAD 4. SEAD 4 sets forth the 13 adjudicative guidelines by which all security clearances are adjudicated. However,

Section "A" of SEAD 4 describes the statutory framework for the legal authority of the Directive. It states in pertinent part:

> The National Security Act of 1947, as amended; Intelligence Reform and Terrorism Prevention Act of 2004 (IRTPA), as amended; Executive Order (EO) 10450, Security Requirements for Government Employment, as amended; EO 12968, Access to Classified Information as amended; EO 13467, Reforming Processes Related to Suitability for Government Employment, Fitness for Contractor Employees, and Eligibility for Access to Classified National Security Information; EO 13549, Classified National Security Information Program for State, Local, Tribal and Private Sector Entities; Performance Accountability Council memorandum, Assignment of Functions Relating to Coverage of Contractor Employee Fitness in the Federal Investigative Standards, 6 December 2012; and other applicable provisions of law.

30.     It is important to note that SEAD 4 is listing the derivative authorities that provide Office of the Director of National Intelligence (ODNI) with the responsibility of establishing the processes and procedures for security clearances.

31.     Most importantly, SEAD 4 makes it abundantly clear to whom this guidance applies, where paragraph "C" (Applicability) unequivocally states, "This Directive applies to **any** executive branch agency authorized or designated to conduct adjudications of covered individuals to determine eligibility for initial or continued access to classified national security information or eligibility to hold a sensitive position."

32.     Therefore, SEAD 1 and SEAD 5, which follows, are binding on the Department.

**SEAD 5: Collection, Use, and Retention Of Publicly Available Social Media Information In Personnel Security Background Investigations And Adjudications.**

33.     The collection of First Amendment protected information is such a sensitive topic in security clearance adjudications that SecEA issued an entire directive narrowly tailoring authority for government agencies to collect said information. SEAD 5 directly references the Privacy Act that must be signed as part of the Standard Form 86 (SF86) that every security clearance applicant must sign. SEAD 5 states in pertinent part that the collection of "social media

account communications and/or findings for individual undergoing background or security investigations; publicly available social media communications of third parties with individuals undergoing background investigations…" is evidence of the government narrowly tailoring the collection of First Amendment Protected information for a legitimate government purpose.[2]

34.    The Privacy Act Statement that every security clearance applicant signs expressly states the following:

> I understand that, for these purposes, publicly available social media information includes any electronic social media information that has been published or broadcast for public consumption, is available on request to the public, is accessible on-line to the public, is available to the public by subscription or purchase, or is otherwise lawfully accessible to the public. I further understand that this authorization does not require me to provide passwords; log into a private account; or take any action that would disclose non-publicly available social media information.

35.    Plaintiff never provided written consent to the federal government to collect his First Amendment Protected information. *SF86 Privacy Act Consent Form*. The Agency's collection of First Amendment protected information does not only violate SEAD 1, 4, and 5 but it was a direct violation of the Privacy Act Statement that he signed.  Thus, Defendant did not have the proper authority to ask and collect the First Amendment protected activity.

**SORN: ODNI-12 and ODNI-17**

36.    The System of Records Notice (SORN) otherwise known as the legal authority for the federal government to retain records about individuals, for security clearance applicants is ODNI-12 - Intelligence Community Security Clearance and Access Approval Repository: 76 FR 42, 745 (Jul. 19, 2011)

37.    ODNI-12 tracks all security clearance adjudications and their access to specific databases. But, in order to understand what information needs to be collected for purposes of the

---

[2]    *Id. 28,060, SF 86 Privacy Act Statement, and SEAD 5*

security clearance process, ODNI-12 works in conjunction with ODNI-17 which specifically addresses security clearance applications and the associated personnel records.

38.     ODNI-17 - Personnel Security Records: 76 FR 42739 (Jul. 19, 2011) describes the type of information that an agency is able to collect in its SORN. More specifically, it will list exactly what the database can retain:

> This system maintains: (i) Biographic enrollment data including name, date and place of birth, Social Security number, gender, current address, other first or last names, prior address(es), personal email address(es), personal phone numbers, passport information, employment type (contractor/government) or other status, and; (ii) data returned from or about the automated record checks conducted against current clearance status information and against financial, law enforcement, credit, terrorism, foreign travel, and commercial databases; and (iii) personnel vetting surveys as required by CV.

39.     In other words, ODNI-17 controls and it does **not** provide a specific exception for the collection of First Amendment protected information. The Agency requested information specifically about Gebert's protected First Amendment activities without a correlating question on the SF86 and no parallel authority to retain that information in the SORN that controls the database that the Defendant uses. Standard Form (SF) - (86), vers. November 2016. Therefore, these questions are outside the scope of the SF86 and the standard security clearance investigation considered within the SORN ODNI-17 that governs the system of records containing the security clearance files.

40.     The SORN goes to great lengths to describe the additional records that will be retained in the database:

> ODNI/NCSC-003, Continuous Evaluation Records, retains the covered individual's enrollment information, which includes personal identifiers provided by the subscribing agency to facilitate ongoing automated records checks for enrollees, as well as other personnel vetting status information, previous investigative products, and records documenting suitability evaluations and decisions. This revised notice adds as a

records source personnel vetting surveys required by the Federal Personnel Vetting Investigative Standards. Applicants do not complete a personnel vetting survey. Personnel vetting surveys are periodic information collections from the covered individual and his/her supervisor(s) to inform ongoing consideration of potential risk, promote timely detection of behaviors of concern, and address potential issues or provide assistance before risks escalate. Employment applicants receive one-time checks of security-relevant information, are not enrolled for ongoing record checks, and personal identifiers and records returned for applicants are retained in the system only for the duration of their initial vetting. Records of applicants who are not hired will not be kept beyond the initial vetting process. Records returned from checks for any enrollee will be retained in accordance with an approved record control schedule. Data necessary to implement business rules, to perform program assessments, and to satisfy auditing requirements will be retained. D/As using ODNI/NCSC-003, Continuous Evaluations Records, must adhere to the principles articulated in the Federal Personnel Vetting Guidelines, the Federal Personnel Vetting Investigative Standards, subsequent implementation guidance, Security Executive Agent Issuances (when applicable), and other policy issuances. The modified routine uses will be effective 30 days after publication, unless they need to be changed as a result of public comment, per OMB A-108, Section 6(e).

41.    The Agency did not have the authority to ask, collect, and store information about Gebert's protected First Amendment activities and associations.

**Defendant Unlawfully Collected Information About Plaintiff's First Amendment Activities**

42.    SEAD 5 illustrates the great lengths that the Defendant must go through if they want to collect information that is outside the "routine" or "standardized" SF86, otherwise identified in SEAD 1. Furthermore, SEAD 5 demonstrates that the SecEA's authority does not supersede Congress and that if the Defendant is collecting additional information then they have to follow the proper process of accounting for it in a SORN and in a Privacy Act Statement.

43.    More specifically SEAD 5 illustrates how improper the Defendant questions are because SEAD 5 specifically states that "covered individuals[3] shall not be requested or required

---

[3]    "Covered Individual: (a) a person who performs work for or on the behalf of the executive branch or who seeks to perform work for or on behalf of the executive branch, but

to: "a. provide passwords; b. log into a private account; or c. take any action that would disclose non-publicly available social media information." SEAD 5(E)(5). Therefore, the mere "act" of asking Plaintiff to provide information about his First Amendment protected activities is impermissible under SEAD 5 because it is meant to reasonably elicit the type of information that the "investigation agency" (Defendant) was prohibited from asking.

44.    SEAD 5 goes on to describe what constitutes an "investigative record" which cross-references the 2012 Federal Investigative Standards, which lists all authorized forms, processes, questionnaires, database checks, etc. for security clearances. Nonetheless, an "investigative record" for security clearance purposes is defined as "the official record of all data obtained on the covered individual from Trust Information Providers, suitability and security applications and questionnaires, and any investigative activity conducted under the Federal Investigative Standards or as approved by the executive agent." SEAD 5(D)(6). Again, it becomes glaringly obvious that the Defendant violated the Plaintiff's Privacy Act rights and they violated the security clearance investigative and adjudicative process.

**Improper Collection of First Amendment Information Under the Privacy Act - 5 U.S.C. § 552a(e)(3) and 5 U.S.C. §552a(e)(7)**

45.    The Privacy Act specifically states that the Agency

"shall . . . inform each individual whom it asks to supply information, on the form which it uses to collect the information or on a separate form that can be retained by the individual (A) the authority (whether granted by statute, or by executive order of the President) which authorizes the solicitation of the information and whether disclosure of such information is mandatory or voluntary; (B) the principal purpose or purposes for which the information is intended to be used; (C) the routine uses which may be made of the information,

---

does not include President or (except to the extent otherwise directed by the President) employees of the President under 3 U.S.C. § 105 or 107, the Vice President or (except to the extent otherwise directed by the Vice President) employees of the Vice President under 3 U.S.C. §106 or annual legislative branch appropriations acts…" SEAD 5(D)(5).

as published pursuant to paragraph (4)(D) of this subsection; and (D) the effects on him, if any, of not providing all or any part of the requested information[.]

5 U.S.C. § 552a(e)(3).

46.    Additionally, the Privacy Act states that the Agency "shall . . . maintain no record describing how any individual exercises rights guaranteed by the First Amendment unless expressly authorized by statute or by the individual about whom the record is maintained unless pertinent to and within the scope of an authorized law enforcement activity[.]" 5 U.S.C. § 552a(e)(7). Plaintiff did not authorize the collection of information related to his First Amendment rights.

47.    No security clearance rule, regulation, or policy allows for the collection of First Amendment information. The security clearance interview was not part of a law enforcement activity nor have there ever been any criminal allegations. More specifically, Guideline J (Criminal Conduct) of SEAD 4 is never mentioned or referenced in the Plaintiff's security clearance denial documents. There is no statute that allows for the collection of First Amendment information for a security clearance. Most importantly, the Agency's own SORN does not allow for the collection of this Information.

48.    Since the Plaintiff did not sign a Privacy Act Statement specific to the collection of his First Amendment activity, Defendant violated the routine use of the information collected by storing it within its system of records that is shared with other agencies through shared databases.

**Improper Sharing of Information Under the Routine Use Provision of 5 U.S.C. § 552a(b)(3) and 5 U.S.C. § 552a(e)(7)**

49.    The Privacy Act specifically identifies conditions for disclosure of collected information, "No agency shall disclose any record which is contained in a system of records by

any means of communication to any person, or another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains, unless disclosure of the record would be[:]"

> ...(3) for a routine use as defined in subsection (a)(7) of this section and described under subsection (e)(4)(D) of this section; ...(7) to another agency or to an instrumentality of any governmental jurisdiction within or under the control of the United States for a civil or criminal law enforcement activity if the activity is authorized by law, and if the head of the agency or instrumentality has made a written request to the agency which maintains the record specifying the particular portion desired and the law enforcement activity for which the record is sought;

5 U.S.C. § 552a(b)(3); 5. U.S.C. § 552a(b)(7).

50.    Since the Plaintiff did not sign a Privacy Act Statement specific to the sharing of his First Amendment activity, Defendant violated the routine use of the information collected by sharing it in a security clearance repository that can be accessed by other government agencies.

### FOIA and Privacy Act Request

51.    In order to obtain records necessary to adequately defend against the revocation of his security clearance, on April 30, 2025, the National Security Law Firm submitted a FOIA and Privacy Act request, with expedited processing, to the Department of State on behalf of the Plaintiff, requesting a copy of,

> *"1.   All interagency and intra-agency correspondence that include Mr. Gebert's name, or social security number; the search should include first and last name of Mr. Gebert or any other variation of his name used by the Agency.*
>
> *2.   All interagency and intra-agency records that include Mr. Gebert's name, or social security number; the search should include first and last name of Mr. Gebert or any other variation of his name used by the Agency.*

*3.    All investigation and standard forms used in Mr. Gebert's security clearance adjudication process;*

*4.    Any documents, records, articles, or reports, upon which the suspension, denial, or revocation of the security clearance was based;*

*5.    A copy of the entire investigative file, as permitted by the national security and other applicable law, and which shall be provided prior to the written response and in compliance with the Privacy Act's processing timelines set for a written reply;*

*6.    Any Privacy Act Statements, other release of information or consent forms, signed by Matthew Gebert in the past 10 years;*

*7.    The SORN, any submissions to the Federal Registrar for the SORN, and any comments associated with the SORN that allows for the U.S. Department of State to collect information, including information protected under the First Amendment, about Mr. Gebert;*

*8.    Any and all documents, recordings, notations, or information, in written, video, or audio format, in the past 10 years mentioning Mr. Gebert's involvement in groups, activities, events, interactions, or works outside of Mr. Gebert's employment at the U.S. Department of State (i.e. First Amendment protected speech/activities)."*

A copy of Mr. Gebert's request and confirmation of his submission is enclosed herein as **Exhibit E**.

52.    On May 5, 2025, Plaintiff's counsel received email confirmation from the Department of State regarding the FOIA/Privacy Act request submitted on April 30, 2025. The request was granted expedited processing, and the reference number was updated to FP-2025-00340 from F-2025-16525. **Exhibit F**.

17

53.     As of the date of this filing, over 30 days (excluding Saturdays, Sundays, and legal public holidays) have passed since Defendant acknowledged the FOIA/Privacy Act request; however, Plaintiff has yet to receive the requested records.

54.     Defendant's failure to make a determination on the request within twenty (20) days (excluding Saturdays, Sundays, and legal public holidays) violates 5 U.S.C. §552(a)(6)(A)(i).

55.     Defendant's refusal to comply with the Plaintiff's request for records pertaining to himself violates 5 U.S.C. § 552a(d)(1).

56.     Defendant's failure to act on Plaintiff's on the request for records deprives Plaintiff of a statutory right and entitles him to judicial review under 5 U.S.C. § 552a(g)(3) and 5 U.S.C. §552(a)(6)(C)(i) as Plaintiff has exhausted all administrative remedies available under the FOIA.

57.     Plaintiff requires the requested records in order to adequately defend himself in the action by the Defendant to revoke his security clearance.

58.     Holding a Top Secret security clearance is a condition of employment for Plaintiff. As such, the suspension of his security clearance resulted in his suspension without pay. Thus, Defendant's gathering of information protected by the First Amendment has harmed Plaintiff both personally and in his career.

## COUNT I
### (Violation of the Freedom of Information Act-5 U.S.C. §552)

59.     Plaintiff realleges paragraphs 1 through 58 as if fully stated herein.

60.     Plaintiff is an individual seeking records that are in the possession, custody, and control of Defendant.

61.     Plaintiff submitted a FOIA and Privacy Act request on April 30, 2025.

62.    On May 5, 2025, Defendant sent email confirmation of the request and granted expedited processing.

63.    Over 30 days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of Plaintiff's request, Defendant has not produced these records to Plaintiff for his review.

64.    Defendant is required to make a determination on Plaintiff's FOIA request within 20 days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of any such request.  5 U.S.C. §552(a)(6)(A)(i).

65.    Defendant has not made a determination within the 20 deadline and is, thus, unlawfully withholding records pursuant to 5 U.S.C. §552.

66.    Plaintiff has exhausted all applicable administrative remedies.

67.    WHEREFORE, Plaintiffs respectfully request that the Court: (1) declare that Defendants violated the Freedom of Information Act; (2) order Defendants to immediately disclose the requested records, and limit redactions only to personal identifiable information for Department of State staff and make copies available to Plaintiff; (3) award Plaintiff reasonable costs and attorney's fees as provided in 5 U.S.C. §552(a)(4)(E); and (4) grant such other relief as the Court deems just and proper.

## COUNT II
### (Violation of the Privacy Act-5 U.S.C. §552a(d)(1))

68.    Plaintiff realleges paragraphs 1 through 58 as if fully stated herein.

69.    Plaintiff is an individual seeking records about himself.

70.    Any record in the possession, custody, and control of Defendant is a record maintained in a system of records, as described 5 U.S.C. §552a(a)(4)-(5).

71.    Plaintiff submitted a FOIA and Privacy Act request on April 30, 2025.

72.     On May 5, 2025, Defendant sent email confirmation of the records request and granted expedited processing.

73.     Defendant is required to permit an individual to review his records, upon request pursuant to 5 U.S.C. §552a(d)(1).

74.     Over 30 days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of Plaintiff's request, Defendant has not produced these records to Plaintiff for his review.

75.     Upon information and belief, there are records responsive to Plaintiff's request that are being withheld in full, and the Defendant violated 5 U.S.C. § 552a when the agency failed to provide any records of the Plaintiff. Thus, Defendant is improperly withholding these records in violation of 5 U.S.C. §552a(d)(1).

76.     Because the Defendant has refused to comply with 5 U.S.C. §552a(d)(1), Plaintiff has exhausted all statutorily available administrative remedies. Thus, Plaintiff is entitled to bring suit pursuant to 5 U.S.C. §552a(g)(1)(B).

77.     Plaintiff has a legal right under the Privacy Act to obtain the information he seeks, and there is no legal basis for Defendant's denial of said right. Defendant's refusal to provide Plaintiff with the requested records amounts to a deprivation of Plaintiff's federal rights.

78.     WHEREFORE, Plaintiff requests that this Court award him the following relief: (1) declare that Defendant violated the Privacy Act; (2) enjoin the Defendant from withholding records pursuant to 5 U.S.C. §552a(g)(3)(A); (3) order Defendant to immediately produce the records that have been improperly withheld from him pursuant to 5 U.S.C. §552a(g)(3)(A); (4) award Plaintiff reasonable costs and attorney's fees as provided in 5 U.S.C. §552a(g)(3)(B); and (4) grant such other relief as the Court may deem just and proper.

## COUNT III
### Violation of the Privacy Act, 5 U.S.C. § 552a (Defendant's Failure to Obtain a Signed Privacy Act Statement)

79.     Plaintiff realleges paragraphs 1 through 58 as if fully stated herein.

80.     The Defendant did not collect nor ask the Plaintiff to sign a Privacy Act Statement before the subject interview where the investigators willfully asked him First Amendment protected questions.

81.     The agency is required to have the signed Privacy Act Statement, pursuant to 5 U.S.C. § 552a(e)(3), to all persons asked to provide personal information about themselves, which will go into a system of records (i.e., the information will be stored and retrieved using the individual's name or other personal identifier such as a Social Security number). Specifically, the statute requires the agency to:

> (3) inform each individual whom it asks to supply information, on the form which it uses to collect the information or on a separate form that can be retained by the individual—
>
> > (A) the authority (whether granted by statute, or by executive order of the President) which authorizes the solicitation of the information and whether disclosure of such information is mandatory or voluntary;
> >
> > (B) the principal purpose or purposes for which the information is intended to be used;
> >
> > (C) the routine uses which may be made of the information, as published pursuant to paragraph (4)(D) of this subsection; and
> >
> > (D) the effects on him, if any, of not providing all or any part of the requested information[.]

82.     Gebert was not properly informed via a Privacy Act Statement nor did he consent or provide written acknowledgement that his First Amendment protection information could be collected, stored, used, and disseminated. This is a violation of 5 U.S.C. § 552a(e)(3).

83.     Thus, Plaintiff may bring suit pursuant to 5 U.S.C. § 552a(g)(1)(D).

84.     Plaintiff was adversely affected as the First Amendment protected information collected subsequent to the Defendant's failure to provide the Privacy Notice was and continues to be used against him and had an adverse effect on him in the form of, among other effects, lost wages, benefits, his security clearance, and damage to his reputation.

85.     The Defendant acted in a manner which was intentional and willful as Defendant knew of the requirements for the Privacy Act, yet acted with flagrant disregard of it. Defendant collected information about Plaintiff's First Amendment protected activities without his consent. Defendant acted without grounds for believing it to be lawful in a manner that was so patently egregious that anyone undertaking the conduct should have known it unlawful.

86.     WHEREFORE, the Plaintiff requests that this Court award him the following relief: (1) declare the Defendant violated the Privacy Act; (2) order Defendant to immediately disclose the requested records; (3) award Plaintiff reasonable costs and attorney's fees as provided in 5 U.S.C. § 552a(g)(4)(B); (4) award Plaintiff actual damages and costs under 5 U.S.C. § 552a(g)(4)(A); and (5) grant such other relief as the Court may deem just and proper.

## COUNT IV

**Violation of the Privacy Act, 5 U.S.C. § 552a(e)(3) (Collecting Information that is not contained in the ODNI's System of Records Notice Act (SORN), ODNI-17, 89 FR 54,077)**

87.     Plaintiff realleges paragraphs 1 through 58 as if fully stated herein.

88.     Agencies "shall subject to the provisions of paragraph (11) of this subsection, published in the Federal Register upon establishment or revision a notice of the existence and character of the system of records, which notice shall include—

    1. the name and location of the system;
    2. the categories of individuals on whom records are maintained in the system;

3. the categories of records maintained in the system;
4. each routine use of the records contained in the system, including the categories of users and the purpose of such use;
5. the policies and practices of the agency regarding storage, retrievability, access controls, retention, and disposal of the records;
6. the title and business address of the agency official who is responsible for the system of records;
7. the agency procedures whereby an individual can be notified at his request if the system of records contains a record pertaining to him;
8. the agency procedures whereby an individual can be notified how he can gain access to any record pertaining to him contained in the system of records, and how he can contest its content; and
9. the categories of sources of records in the system;" 5 U.S.C. § 552a(e)(4)

89.    The SORN outlines the information that can be collected during the course of the security clearance process. The SORN specifically cites threats, crimes, or national security related matters. It does not reference First Amendment activities.

90.    The SORN does not allow for the agency to ask and collect information about any First Amendment protected information, speech, thoughts, or opinions except for those narrowly tailored on the SF86 related to terrorism, sedition, and espionage.

91.    The Agency was not allowed to ask about this information because this information is not allowed to be collected under any of the Agency's SORN.

92.    Plaintiff is being adversely affected  by reason of Defendant's unlawful collection, use, storage, and dissemination of such information without proper authority as it has resulted in his indefinite suspension without pay. Plaintiff will continue to be adversely affected unless Defendant is compelled to conform its conduct to the requirements of law.

93.    This is a violation of 5 U.S.C. § 552a(g)(1)(D) as the information collected and stored in violation and contrary to the SORN was and continues to be used against Gebert and

had an adverse effect on him in the form of, among other effects, lost wages, benefits, his security clearance, and damage to his reputation.

94.    Thus, Plaintiff may bring suit pursuant to 5 U.S.C. § 552a(g)(1)(D).

95.    The Defendant acted in a manner which was intentional and willful as Defendant knew of the requirements for the Privacy Act, yet acted with flagrant disregard of it. Defendant collected information about Plaintiff's First Amendment protected activities without his consent. Defendant acted without grounds for believing it to be lawful in a manner that was so patently egregious that anyone undertaking the conduct should have known it unlawful.

96.    WHEREFORE, the Plaintiff requests that this Court award him the following relief: (1) declare the Defendant violated the Privacy Act; (2) order Defendant to immediately disclose the requested records; (3) award Plaintiff reasonable costs and attorney's fees as provided in 5 U.S.C. § 552a(g)(4)(B); (4) award Plaintiff actual damages and costs under 5 U.S.C. § 552a(g)(4)(A); and (5) grant such other relief as the Court may deem just and proper.

## COUNT V
### Violation of the Privacy Act, 5 U.S.C. § 552a(e)(7) (Collecting First Amendment Information Without Proper Authority)

97.    Plaintiff realleges paragraphs 1 through 58 as if fully stated herein.

98.    The Privacy Act specifically states that the Agency "shall…maintain no record describing how any individual exercises rights guaranteed by the First Amendment unless expressly authorized by statute or by the individual about whom the record is maintained or unless pertinent to and within the scope of an authorized law enforcement activity." 5 U.S.C. § 552a(e)(7).

99.    Plaintiff did not expressly authorize the collection of information related to his First Amendment rights.

100.    No security clearance rule, regulation, statute, or policy allows for the collection of First Amendment information.

101.    Plaintiff is being irreparably harmed by reason of Defendant's unlawful collection, use, storage, and dissemination of such information without proper authority. Plaintiff will continue to be irreparably harmed unless Defendant is compelled to conform its conduct to the requirements of law.

102.    Defendant is in violation of 5 U.S.C. § 552a(e)(7) as the information collected qualify as records describing how Plaintiff was exercising his First Amendment rights, which is expressly prohibited without his consent – which Defendant did not obtain – or authorized by statute, which does not exist.

103.    Thus, Plaintiff may bring suit pursuant to 5 U.S.C. § 552a(g)(1)(D).

104.    Plaintiff was adversely affected as the First Amendment protected information collected subsequent to the Defendant's failure to provide the Privacy Notice was and continues to be used against him and had an adverse effect on him in the form of, among other effects, lost wages, benefits, his security clearance, and damage to his reputation.

105.    The Defendant acted in a manner which was intentional and willful as Defendant knew that the Privacy Act prohibited the collection of First Amendment protected information here, yet acted with flagrant disregard of it. Defendant collected information about Plaintiff's exercise of his First Amendment rights without authority. Defendant acted without grounds for believing it to be lawful in a manner that was so patently egregious that anyone undertaking the conduct should have known it unlawful.

106.    WHEREFORE, the Plaintiff requests that this Court award him the following relief: (1) declare the Defendant violated the Privacy Act; (2) order Defendant to immediately

disclose the requested records; (3) award Plaintiff reasonable costs and attorney's fees as provided in 5 U.S.C. § 552a(g)(4)(B); (4) award Plaintiff actual damages and costs under 5 U.S.C. § 552a(g)(4)(A); and (5) grant such other relief as the Court may deem just and proper.

### COUNT VI
**Improper Sharing of Information Under the Routine Use Provision of 5 U.S.C. § 552a(b)(3) and 5 U.S.C. § 552a(b)(7)**

107.    Plaintiff realleges paragraphs 1 through 58 as if fully stated herein.

108.    The Privacy Act specifically identifies conditions for disclosure of collection information, "No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains, unless disclosure of the record would be:

> ...(3) for a routine use as defined in subsection (a)(7) of this section and described under subsection (e)(4)(D) of this section;
>
> ...(7) to another agency or to an instrumentality of any governmental jurisdiction within or under the control of the United States for a civil or criminal law enforcement activity if the activity is authorized by law, and if the head of the agency or instrumentality has made a written request to the agency which maintains the record specifying the particular portion desired and the law enforcement activity for which the record is sought;

109.    Since the Plaintiff did not sign a Privacy Act Statement specific to the collection of his First Amendment activity and did not request or consent to records pertaining to his First Amendment activities being stored in a system accessible by an agency conducting a security clearance investigation, this is a violation of 5 U.S.C. § 552a(b) as the information was collected and stored in violation and contrary to the Routine Use notice – or lack thereof - and was not for a legally authorized civil or criminal law enforcement activity.

110.    Thus, Plaintiff may bring suit pursuant to 5 U.S.C. § 552a(g)(1)(D).

111.    Plaintiff was adversely affected as the information collected subsequent to the Defendant's failure to provide the Privacy Notice was and continues to be used against him and had an adverse effect on him in the form of, among other effects, lost wages, benefits, his security clearance, and damage to his reputation.

112.    The Defendant acted in a manner which was intentional and willful as Defendant knew that the Privacy Act prohibited the collection of First Amendment protected information here, yet acted with flagrant disregard of it. Defendant collected information about Plaintiff's exercise of his First Amendment rights without authority. Defendant acted without grounds for believing it to be lawful in a manner that was so patently egregious that anyone undertaking the conduct should have known it unlawful.

113.    WHEREFORE, the Plaintiff requests that this Court award him the following relief: (1) declare the Defendant violated the Privacy Act; (2) order Defendant to immediately disclose the requested records; (3) award Plaintiff reasonable costs and attorney's fees as provided in 5 U.S.C. § 552a(g)(4)(B); (4) award Plaintiff actual damages and costs under 5 U.S.C. § 552a(g)(4)(A); and (5) grant such other relief as the Court may deem just and proper.

**PRAYER FOR RELIEF AS TO COUNTS I-VI**

Plaintiff respectfully requests that the Court:

114.    Declare the Defendant's failure to comply with FOIA and the Privacy Act to be unlawful;

115.    Order the Defendant to conduct an independent and comprehensive search of its documents and records in response to Plaintiff's FOIA and Privacy Act Request;

116.    Order the Defendant to produce all responsive records without further delay or charge;

117.    Enjoin the Defendant from continuing to withhold records responsive to Plaintiff's FOIA and Privacy Act Request;

118.    Award Plaintiff attorneys fees and other litigation costs reasonably incurred in this action pursuant to 5 U.S.C. §552(a)(4)(E) and 5 U.S.C. §552a(g)(3)(B); and

119.    Grant such other relief as the Court deems just and proper.


Dated: July 9, 2025                                    Respectfully submitted,

                                                       By: *Brett O'Brien*
                                                       BRETT O'BRIEN, ESQ
                                                       DC Bar License #: 1753983
                                                       NATIONAL SECURITY LAW
                                                       FIRM, LLC
                                                       1250 Connecticut Avenue NW
                                                       Washington, DC 20036
                                                       Phone:  (202) 600-4996
                                                       Fax:     (202) 545-6318